UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MANUEL ROBLES, SANTO L. CEDENO SALTOS, WALTER GUZMAN, JORGE SARMIENTO, LUIS M. LLERENA, OSCAR FLORES, ALEXANDRA LASTRA, and FREDDY PADILLA,[1]

Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL UNIVERSAL SERVICES, INC., A/K/A ALLIANCE ENVIRONMENTAL SYSTEMS, INC., JOHN DOE,

Defendants.

Civil Action No. 09-2377 (SDW) (MCA)

**OPINION**

March 31, 2011

**WIGENTON**, District Judge.

Before the Court is Defendant, Alliance Environmental System's ("Defendant" or "Alliance"), Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). This Motion is decided without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons below, this Court grants Defendant's Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 24, 2007, Defendant entered into a subcontract with Geol Services, Inc. ("Geol") to remove asbestos ("Alliance/Geol subcontract") at the Walston Hospital in Fort Dix, New Jersey ("Fort Dix project"). (Def.'s Ex. 3.) The Alliance/Geol subcontract was part of a

---

[1] Plaintiffs' counsel has stipulated to the dismissal of the claims asserted by Llerena and Flores with prejudice and the dismissal of Padilla's claims without prejudice. (Docket Entry Nos. 52 and 53.)

larger construction project for which Environmental Design & Construction, LLC ("EDC") was the prime contractor, and Geol was the subcontractor. (Def.'s Statement of Facts ¶ 5.) On December 21, 2007, before the effective date of the Alliance/Geol subcontract, the U.S. Department of Labor ("DOL") determined that asbestos removal work was subject to the Service Contract Act ("SCA"). (Def.'s Ex. 4 at 7; Def.'s Ex. 2, Isayeff Dep., 26:23-15.) Defendant had no input in the wage determination. (Def.'s Ex. 2, Isayeff Dep., 26:4-6.) Consequently, consistent with the DOL's determination, Alliance was required to pay its employees at a minimum rate of $19.04 per hour and the Alliance/Geol subcontract agreement was based on that rate. (Def.'s Ex. 3 at 1; Def.'s Ex. 2, Isayeff Dep., 36:15-23.)

Subsequently, in January 2008, Plaintiffs Manuel Robles ("Robles"), Santo Cedeno Saltos ("Saltos"), Walter Guzman ("Guzman"), Jorge Sarmiento ("Sarmiento"), and Alexandra Lastra ("Lastra") (collectively "Plaintiffs") applied for employment with Alliance. (Def.'s Exs. 10, 12, 14, 18.) Alliance's employment application contained an "at-will" provision which read: "I understand and agree that if I am hired, my employment will be 'at-will.' I understand that 'at-will' employment means that, for any reason or without any reason, and at any time, either I or the Company can discontinue my employment without either of having or giving any reason for the discontinuation of my employment with the Company." (Def.'s Ex. 10 at ¶ 8.) Plaintiffs signed the employment application and they each testified that they read and understood the "at-will" provision. (Def.'s Ex. 9, Robles Dep., 16:2-24; Def.'s Ex. 11, Saltos Dep., 17:1-21, 18:2-18; Def.'s Ex. 13, Guzman Dep., 24:2-25; Def.'s Ex. 17, Sarmiento Dep., 13:3-16; Def.'s Ex. 21, Lastra Dep., 13:13-23.)

In February and March 2008, Defendant hired Plaintiffs to work on the Fort Dix Project pursuant to the terms of the employment application. Plaintiffs were paid at the SCA rate,

$19.04 an hour.  Subsequently, Plaintiffs complained to Defendant that they were supposed to be paid at a higher rate. Plaintiffs allege that Defendant promised to pay them "at the federally mandated rate of $45.00 per hour."  (Sixth Am. Compl. (hereinafter "Am. Compl.") Count 1, ¶ 3.)  There are, however, some discrepancies in Plaintiffs' testimony as to this alleged oral agreement.  For example, Robles and Sarmiento testified that they were told during their interviews that they would be paid at a rate of $40 an hour.  (Def.'s Ex. 9, Robles Dep., 18:6-11; Def.'s Ex. 17, Sarmiento Dep., 12:15-19.)  On the other hand, Saltos testified that there was no discussion about wage rates during his interview.  (Def.'s Ex. 11, Saltos Dep., 19:8-15.)  Saltos asserts that he was told he would be paid $40 an hour after beginning his employment with Alliance and after he received his first paycheck.  (Id. at 19:3-7, 19:19-21.)  Similarly, Guzman testified that he believed he would be paid at the prevailing rate but there was no discussion as to a specific amount.  (Def.'s Ex. 13, Guzman Dep., 26:9-16.)  Lastra also testified that he believed the proper rate was $40 an hour based on his co-workers' comments.  (Def.'s Ex. 21, Lastra Dep., 27:14-21.)

Plaintiffs allege that in July 2008, they complained to the DOL about their wage rates. (Am. Compl. Count 1, ¶ 5.)  As a result, on August 15, 2008, the DOL contacted Alliance to conduct an investigation on the rates being paid at the Fort Dix project.  (Def.'s Ex. 23.) However, Plaintiffs testified that they had no basis to believe that Alliance knew, at any time prior to the filing of this suit, that they complained to the DOL. (Def.'s Ex. 9, Robles Dep., 50:2-18; Def.'s Ex. 17, Sarmiento Dep., 26:21-23; Def.'s Ex. 21, Lastra Dep., 28:3-9.)  Subsequently, Sarmiento, Guzman, Saltos, and Robles were terminated for allegedly stealing copper pipes from the Fort Dix Project.  (Def.'s Ex. 22.)  Other than Robles, who was terminated on August 27, 2008, the other Plaintiffs were terminated months before the DOL contacted Defendant.  (Id.)

3

On January 15, 2009, three days before the Fort Dix project was scheduled to be completed, (Def.'s Statement of Facts ¶ 9), Geol informed Defendant that the Fort Dix project was subject to the Davis-Bacon Act, 40 U.S.C. §276a, et seq.; thus, the employees working on that project were entitled to a wage scale increase of $40 per hour. (Def.'s Ex. 5.) Thereafter, the DOL sequestered funds for contract payments due for the Fort Dix project as a result of the wage scale increase. (Def.'s Ex. 7.) Subsequently, Plaintiffs were awarded back pay based on the difference between the SCA rate and the Davis-Bacon rate. (Pls.' Br. 7.)

On April 22, 2009, Plaintiffs filed an action in the Superior Court of New Jersey, Hudson County, alleging that Defendant violated the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-3 et seq. (West 2000) ("CEPA"), wrongful discharge, and defamation. On June 15, 2008, Defendant removed the action to the United States District Court for New Jersey and filed the subject Summary Judgment Motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." Id. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The dispute is not genuine if it merely involves "some metaphysical

4

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crafting Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Servs., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp., 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." Black Car Assistance Corp. v. New Jersey, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

5

# DISCUSSION

Defendant moves for summary judgment on Plaintiffs' claims because Plaintiffs have failed to show that Defendant violated CEPA. Furthermore, Defendant asserts that Plaintiffs cannot sustain a wrongful discharge claim. Finally, Defendant contends that Plaintiffs cannot establish a defamation claim. On the other hand, Plaintiffs assert that summary judgment should not be granted because there are genuine issues of material fact and they have shown sufficient facts to meet their burden of proof.

## I. CEPA

"CEPA was enacted in 1986 to protect from retaliatory action employees who 'blow the whistle' on organizations engaged in illegal or harmful activity." Young v. Schering Corp., 141 N.J. 16, 23 (1995) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 417-18 (1994)). The statute provides in relevant part:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer , or another employee, with whom there is a business relationship, that the employee reasonably believes:
>    (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . or
>    (2) is fraudulent or criminal . . .

N.J. Stat. Ann. § 34:19-3.

**Statute of Limitations**

Although Defendant does not raise this issue, this Court finds that several of Plaintiffs' CEPA claims are time barred. CEPA provides that "[u]pon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." Id. § 34:19-5 (emphasis added). Actionable

retaliation is defined in the statute as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." Id. § 34:19-2e.

Plaintiffs, in response to Defendant's argument that Plaintiffs have waived their wrongful discharge claims, now assert that Saltos and Lastra's CEPA claims are time barred. (Pls.' Reply Br. 2.) However, contrary to Plaintiffs' position, Saltos's CEPA claim is not time barred. Saltos was terminated on May 7, 2008 and he filed his CEPA claim in the Superior Court of New Jersey on April 22, 2009. (Compl. Count 4, ¶¶ 1-5.) Therefore, Saltos's CEPA claim is not time barred. On the other hand, Plaintiffs are accurate in their assertion that Lastra's CEPA claim is time barred. Lastra was discharged on June 15, 2008, but he was not added as a plaintiff until July 21, 2010. Therefore, he filed his CEPA claim about two years after it accrued. Consequently, Lastra has no viable CEPA claims.

Similarly, Guzman and Sarmiento's CEPA claims are time barred. Guzman and Sarmiento were both discharged on March 10, 2008. (Def.'s Ex. 22; Def.'s Statement of Facts ¶¶ 50-51.) However, they did not file their CEPA claims until April 22, 2009. Thus, they filed outside the one year statute of limitations. Because Lastra, Guzman, and Sarmiento did not file their CEPA claims within the one year limitations period, only Saltos and Robles can proceed on their CEPA claims.

**Saltos and Robles's CEPA Claims**

To sustain a CEPA claim, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal

7

>    connection exists between the whistle-blowing activity and the
>    adverse employment action.

Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).

Robles and Saltos claim they were terminated because they contacted the DOL about their wage rates. This Court finds that Plaintiffs have not demonstrated the essential elements necessary to sustain a CEPA claim. Without analyzing the first three elements, this Court concludes that the record clearly shows that Plaintiffs have failed to demonstrate that there is a connection between their complaint to the DOL and their termination. Saltos was terminated before Plaintiffs complained to the DOL about the wage discrepancy and months before the DOL contacted Alliance about conducting an investigation on the wage rates. (Def.'s Ex. 22; Am. Compl. Count 1, ¶¶ 4, 5.) Saltos was terminated May 5, 2008, (Def.'s Ex. 22); however, Plaintiffs did not complain to the DOL until July 2008, (Am. Compl. Count 1, ¶ 5), and the DOL did not contact Defendant until August 15, 2008. (Def.'s Ex. 23.) Furthermore, Plaintiffs testified that they had no basis to believe that Alliance knew they had contacted the DOL. (Def.'s Ex. 9, Robles Dep., 50:2-18; Def.'s Ex. 17, Sarmiento Dep., 26:21-23; Def.'s Ex. 21, Lastra Dep., 28:3-9.) Consequently, Plaintiffs have not satisfied the fourth element.

## II. Wrongful Discharge

Plaintiffs assert that Defendant breached its employment agreement with them by paying them less than $40 an hour and discharging them before the Fort Dix project was completed. Therefore, Plaintiff is seeking "damages equal to the difference between $19.04 per hour and the $40.00 per hour promised to them at the time of hire for all weeks they would have worked from the date of their wrongful discharge until" the date the Fort Dix projected concluded. (Pls.' Br. 7.) Plaintiffs' claims suffer from many deficiencies.

First, to the extent that Plaintiffs are arguing that they are entitled to the difference between the rate they were paid and the federally mandated rate from the date they were hired to their termination date, that argument is moot because the DOL has already awarded Plaintiffs back pay for that period. (Pls.' Br. 7.) Furthermore, there is no private cause of action for wages under the Davis-Bacon Act. See Weber v. Heat Control Co., 728 F.2d 599 (3d Cir. 1984); see also United States ex. rel. Glynn v. Capeletti Bros. Inc., 621 F.2d 1309, 1317 (5th Cir. 1980).

Second, Robles and Saltos waived their wrongful discharge claim when they initiated this action under CEPA. The waiver provision in CEPA provides that:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J. Stat. Ann. § 34:19-8. Therefore, by bringing a CEPA claim against Defendant, Robles and Saltos waived their common law wrongful discharge claim because that claim is not "substantially independent of the CEPA claim." Young, 141 N.J. at 29 (holding that "once a CEPA claim is 'instituted,' any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law . . . are all waived.");[2] see also Casper v. Paine Webber Grp., Inc., 787 F. Supp. 1480, 1509-10 (D.N.J. 1992) (stating that plaintiff waived claims alleging retaliatory discharge when plaintiff decided to file a CEPA claim).

---

[2] Plaintiffs, acknowledging the Court's holding in Young, argue that Lastra and Saltos's wrongful discharge claims should be allowed to proceed because their CEPA claims are time barred. (Pls.' Reply Br. 2.)

Third, even if Plaintiffs' wrongful discharge claims are not waived,[3] Plaintiffs cannot sustain those claims because they are not supported by the facts. All of the Plaintiffs testified that there was no employment agreement between them and Defendant. (Defs.' Ex. 13, Guzman Dep., 26:23-24.) Plaintiffs maintain that they read and understood the "at-will" provision in Alliance's employment application. They also admit that they were "at-will" employees and they understood that Defendant could terminate them at any time. (Def.'s Ex. 9, Robles Dep., 16:2-24; Def.'s Ex. 11, Saltos Dep., 17:1-21, 18:2-18; Def.'s Ex. 13, Guzman Dep., 24:2-25; Def.'s Ex. 17, Sarmiento Dep., 13:3-16; Def.'s Ex. 21, Lastra Dep., 13:13-23.) Plaintiffs even concede in their brief that they were "at-will" employees. (Pls.' Br. 3.) Therefore, there was clearly no employment agreement and Defendant had the right to terminate Plaintiffs at any time and without cause. Consequently, Plaintiffs' subsequent termination was not a wrongful discharge and Plaintiffs are not entitled to any damages.

Nonetheless, Plaintiffs argue that although they were "at-will" employees, they were wrongfully terminated because "it was their reasonable expectation that, once hired, they would remain employed" until the Fort Dix project was completed. (Pls.' Br. 3.) Plaintiffs make this assertion without providing any basis for why they entertained such an expectation, especially after their admission that they knew and understood they could be terminated at any time. In fact Lastra testified that he did not think he would be working for a specific amount of time "because every job when you least think it's going to happen, they get rid of you." (Def.'s Ex. 21, Lastra Dep., 13:9-12.) Thus, contrary to Plaintiffs' current position, they testified that they had no expectation that they would be employed until the Fort Dix project was completed.

---

[3] Plaintiffs Lastra, Guzman, and Sarmiento's wrongful discharge claims are not waived because of this Court's determination that their CEPA claims are barred by the statute of limitations. See Crusco v. Oakland Care Ctr., Inc., 305 N.J. Super. 605, 610 (App. Div. 1997) (concluding that the filing of CEPA claim that is time barred does not preclude a plaintiff from bringing a common law wrongful discharge claim); Ballinger v. Del. River Port Auth., 172 N.J. 586, 602 (2002) (holding that Crusco was correctly decided).

The Court also finds unpersuasive Plaintiffs' argument that although they were "at-will" employees, Defendant could not terminate them for exercising a statutorily created right. (Pls.' Br. 11.) As discussed earlier in the Court's analysis of Plaintiffs' CEPA claims, Plaintiffs have not shown that there is a causal connection between their complaint to the DOL and their subsequent termination. Hence, Plaintiffs' termination does not implicate their exercise of a statutorily created right.

### III. Defamation

Plaintiffs Robles, Saltos, Guzman, and Sarmiento allege that Defendant's accusations that they stole copper pipes from the Fort Dix project were "defamatory" and caused Plaintiffs' "good reputation to be seriously impaired." (Am. Compl. Count 3, ¶ 5; Am. Compl. Count 5, ¶ 2.)

"Defamation imposes liability for publication of false statements that injure the reputation of another." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 765 (1989) (citing Maressa v. N.J. Monthly, 89 N.J. 176, 190 (1982), cert. denied, 459 U.S. 907 (1982)). "In order to establish a prima facie case of defamation . . . a plaintiff must show that defendant communicated to a third person a false statement about plaintiff that tended to harm [the] plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff." W.J.A. v. D.A., 416 N.J. Super. 380, 384-85 (App. Div. 2010) (quoting McLaughlin v. Rosanio, 331 N.J. Super. 303, 312 (App. Div. 2000)) (internal quotations omitted).

Defendant maintains that Plaintiffs' defamation claims have no merit because Plaintiffs testified that there was no harm to their reputations. (Def.'s Br. 12.) This Court agrees. For example, Robles and Sarmiento testified that they had no difficulty finding employment after their termination. (Def.'s Ex. 9, Robles Dep., 41:1-23; Def.'s Ex. 17, Sarmiento Dep., 28:12-14.)

11

Similarly, Saltos stated that his termination from Alliance did not prevent him from getting another job and his reputation was not damaged in any way. (Def.'s Ex. 11, Saltos Dep., 39:11-16.) Likewise, Guzman asserted that his "reputation as a good worker is untarnished" and he had no trouble finding another job after his termination from the Fort Dix project. (Def.'s Ex. 13, Guzman Dep., 47:2-4.) The record clearly shows that Plaintiffs' reputations did not suffer any injury from the alleged defamatory statements.

To overcome this shortcoming, Plaintiffs now argue that their claim is for slander per se;[4] therefore, they do not need to prove harm to their reputations. There are four types of slander that qualify as slander per se: "(1) accusing another of having committed a criminal offense; (2) accusing another of having a loathsome disease; (3) accusing another of engaging in conduct, or having a condition or trait, incompatible with his or her business; and (4) accusing another of having engaged in serious sexual misconduct." Ricciardi v. Weber, 350 N.J. Super. 453, 475-76 (App. Div. 2002) (citing McLaughlin, 331 N.J. Super. at 314; Biondi v. Nassimos, 300 N.J. Super. 148, 154-57 (App. Div. 1997)).

Defendant maintains that its allegations of theft do not constitute slander per se because Plaintiffs' conduct amounted to no "more than the civil tort of conversion" and none of the Plaintiffs testified that they were called criminals. (Def.'s Reply Br. 7.) This Court finds it unnecessary to discuss whether Defendant's statements constitute slander per se[5] because it finds

---

[4] Although Defendant is accurate in arguing that slander per se has been severely criticized by New Jersey courts, and the Appellate Division has stated that "slander per se is on its last legs in New Jersey, and may no longer be a viable jurisprudential basis for awarding damages when there is no demonstrable harm," McLaughlin, 331 N.J. Super. at 320, the New Jersey Supreme Court has specifically stated that it will defer consideration of the elimination of the doctrine to "another time." Ward v. Zelikovsky, 136 N.J. 516, 541 (1994). Therefore, the doctrine is still viable in New Jersey.

[5] The Court, however, notes that "[f]or the purposes of the law of defamation, distinctions between the terms larceny, theft and shoplifting, whether crimes or lesser crimes, are not significant" because "the accusation of theft involves a criminal offense of moral turpitude." Hall v. Heavey, 195 N.J. Super. 590, 596-97 (App. Div. 1984). Furthermore, an accusation of theft has, in many cases, been considered slander per se. See Jorgensen v. Pa. R.R. Co., 25 N.J. 541, 563-64 (1958) (holding that the accusation that an employee had stolen company property was

that Plaintiffs have failed to establish that Defendant published the alleged defamatory statements to any third parties. Robles testified that Alliance disclosed its basis for terminating him in connection with his application for unemployment. (Def.'s Ex. 9, Robles Dep., 39:16-21.) However, "[a] [defamatory] statement made in the course of judicial, administrative, or legislative proceedings is absolutely privileged and wholly immune from liability." Erickson v. Marsh & McLennan, Co., 117 N.J. 539, 563 (1990). Unemployment proceedings are "judicial determinations by administrative agencies." Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 522 (2006) (quoting Ensslin v. Twp. of N. Bergen, 275 N.J. Super. 352, 369 (App. Div. 1994)) (internal quotations omitted). See also In re N.J.A.C. 12:17-9.6 ex. rel. State Dep't of Labor, 395 N.J. Super. 394, 398 n.3 (App. Div. 2007) (stating that claims for unemployment compensation benefits are administrative proceedings.) Therefore, Defendant's statements in connection with unemployment proceedings are not actionable.

Additionally, none of the remaining Plaintiffs have demonstrated that Defendant published the alleged defamatory statements. For instance, Saltos testified that he had no to basis to believe that Alliance told the other employees of the alleged theft. (Def.'s Ex. 11, Saltos Dep., 39:20-23.) Sarmiento also asserted that he did not know "if Alliance told anyone that [] [he] had stolen copper." (Def.'s Ex. 17, Sarmiento Dep., 28:6-8.) Nonetheless, Plaintiffs maintain that, at the very least, Defendant told the Vice President and other individuals "within the Defendant's organization" that Plaintiffs were terminated for stealing. (Pls.' Br. 13-14.) Plaintiffs make this bare assertion without providing any evidence to support it. Plaintiffs had the opportunity to depose Alliance's Vice President; however, they failed to inquire as to whether he was informed about the alleged theft. To defeat a motion for summary judgment,

---

defamatory per se); Murphy v. Johns-Manville Prods. Corp., 45 N.J. Super. 478, 488 (App. Div. 1957), certif. denied, 25 N.J. 55 (1957) (stating that a charge of theft is actionable per se).

Plaintiffs "must present more than just bare assertions, conclusory allegations or suspicions." Podobnik, 409 F.3d at 594 (quoting Celotex Corp., 477 U.S. at 325) (internal quotations omitted).  Plaintiffs have not met this burden.  See also Shields, 254 F.3d at 481 (a non-moving party may not rest upon the mere allegations, speculation, unsupported assertions or denials of its pleadings to meet its burden in summary judgment motion).  Consequently, they have failed to establish a claim for defamation.

## CONCLUSION

For the reasons stated above, Alliance's Motion for Summary Judgment is GRANTED.

**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

cc:  Madeline Cox Arleo, U.S.M.J.